Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1643 | DATE | 4/9/2004 |
| CASE TITLE | MARY SCHMIT vs. TRANS UNION LLC, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant Key Bank's motion for summary judgment is granted. Status hearing is set for May 13, 2004 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 1 2 2004 date docketed | 19 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY SCHMIT, )
)
        Plaintiff, )
)
vs. ) No. 03 C 1643
)
TRANS UNION LLC and KEY BANK, )
)
        Defendants. )

DOCKETED
APR 12 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Schmit brought this action against defendants Trans Union, LLC (Trans Union), and Key Bank, alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. In her three-count complaint plaintiff also claims Trans Union defamed her. Defendant Key Bank now moves for summary judgment on Count III, plaintiff's FCRA claim against the bank. That motion is granted.

## BACKGROUND

In February 1999, plaintiff entered into a retail installment contract with Rockenbach Chevrolet for the purchase of a 1999 Chevrolet Silverado pickup truck for her son, John Schmit. Under the terms of the contract plaintiff was to pay the dealer 72 monthly payments of $704 each. Subsequently, the dealer sold the contract to Key Bank. On September 25, 1999, John Schmit traded in the new pickup truck at Faul Chevrolet. The dealership agreed to pay off the balance on the 1999 trade-in and John agreed to purchase one of the dealership's older trucks. Despite the agreement, the dealership did not pay the balance on the 1999 truck, and neither the plaintiff nor her son made the monthly payments required under the terms of the

19

contract. After plaintiff defaulted, Key Bank sold the loan to Cavalry Investments, LLC (Calvary), and considered the remaining balance "uncollectible."

On October 22, 2001, plaintiff filed a complaint in the Circuit Court of Cook County against Faul Chevrolet for fraud. A panel of arbitrators found in favor of plaintiff against Faul Chevrolet, awarding her $20,000 plus costs. They also found in her favor against the intervening plaintiff, Calvary. Two months later the court entered a judgment on award of arbitration for plaintiff.

On October 28, 2002, in an agreed order between plaintiff and Calvary, all findings against Calvary in the award of the arbitrators and the judgment on the award of arbitrators were vacated. Calvary then filed suit against plaintiff on January 31, 2003, for failure to pay off the original loan. Though Calvary had repossessed the 1999 pickup truck and sold it, there was still an outstanding balance on the loan of over $17,800. In her answer to Calvary's suit, plaintiff stated that she had not been able to collect her damages award from Faul Chevrolet and pleaded the affirmative defense of *res judicata*. Calvary voluntarily dismissed the case in October 2003.

In November 2002, plaintiff learned that Trans Union was reporting that her Key Bank loan for the pickup truck had been charged off as a bad debt. Plaintiff mailed Trans Union a copy of her judgment against Faul Chevrolet, along with a letter stating that the judgment released her from all debt to Key Bank. Plaintiff requested that Trans Union amend her credit report within thirty days and send her a corrected copy. In a letter dated November 28, 2002, Trans Union maintained that the information plaintiff disputed did not currently appear on her credit report. Plaintiff sent a second letter to the credit agency in January 2003. Again she disputed the report regarding the Key Bank loan and included a copy of her judgment

against Faul Chevrolet. On January 11, 2003, Trans Union responded, acknowledging plaintiff's dispute regarding the status of her Key Bank account. Trans Union stated that it would contact "the source of the disputed information" and would "ask them to verify the accuracy of the reported information." Plaintiff asserts that Trans Union sent Key Bank a Consumer Dispute Verification form in early January 2003, requesting that the bank investigate plaintiff's claim. Trans Union sent plaintiff a revised credit report on January 31, 2003, informing her that despite her claims, the reported status of her Key Bank account was verified and had been reported accurately. Plaintiff filed this suit on March 6, 2003. By March 31, 2003, Trans Union had deleted the disputed Key Bank account from her credit report.

Plaintiff maintains that as a result of defendants' failure to conduct a reasonable investigation of her dispute, as required under the FCRA, she has suffered "severe stress," which could impact her health, and has been afraid to apply for credit. Plaintiff did apply for a home mortgage in 2002 and was approved.

## DISCUSSION

The court's function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists and that the moving party is entitled to judgment as a matter of law will the court grant the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). Key Bank argues that it is entitled to summary judgment on plaintiff's FCRA claim because it reported accurate information and plaintiff was not injured by its alleged actions. Both of these arguments justifies summary judgment.

Plaintiff brings her action pursuant to §§ 1681n(a) and 1681o(a) of the FCRA, which provide a private cause of action for willful and negligent violation of the Act. Plaintiff maintains that Key Bank violated § 1681s-2(b), which states:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency; and
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1).

Thus, after being informed of a dispute, a consumer information provider must conduct an investigation, report the results to the consumer reporting agency and, if there is a finding of inaccurate information, inform all other reporting agencies as well. Key Bank maintains that it only reported accurate information regarding plaintiff's account, and, therefore, it did not violate this or any other section of the FCRA.

Key Bank reported to Trans Union that its account with plaintiff had been "charged off as bad debt." Plaintiff does not dispute that she entered into a retail installment contract with Rockenbach Chevrolet, which required her to make monthly payments. Nor does she deny that this retail contract was sold to Key Bank and that she defaulted on the loan. Though plaintiff obtained a judgment against Faul Chevrolet for fraud regarding its promise to pay off her Key Bank loan, she acknowledges that Key Bank was not a party to this suit and was

not paid. In fact, at the time of plaintiff's judgment, Key Bank had already sold the overdue debt to Calvary. The undisputed facts establish Key Bank's report as true: that its loan to plaintiff was "charged off as bad debt."

While plaintiff does not dispute that Key Bank provided Trans Union with technically accurate information, she argues that the bank failed to conduct a reasonable investigation into the disputed matter and that its omission of plaintiff's settlement against Faul Chevrolet rendered Key Bank's report so incomplete that it was inaccurate. Plaintiff relies on Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F.Supp.2d 1135 (E.D.Mo. 2000), in which the court found that in some circumstances, reviewing an internal file may not be sufficient for a reasonable investigation into disputed consumer information. The court pointed out that the factors in assessing whether an investigation is reasonable are: "(1) whether the consumer has alerted the agency that the initial source of the information may be unreliable . . . and (2) the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." Id. at 1143 (citing Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3rd Cir. 1997)). In Schmit's case, she never questioned the source of Key Bank's information regarding her loan. In fact, she does not dispute the facts upon which Key Bank relied for its report. Plaintiff's contention is that her subsequent judgment altered her obligation regarding the loan. As Key Bank had no reason to doubt the accuracy of its information regarding its dealings with plaintiff, there is no reason to believe it failed to conduct a reasonable investigation.

Although plaintiff does not question the credibility of Key Bank's source of information, she does contend that the defendant did not provide sufficient information in its report. Plaintiff cites Curtis v. Trans Union & Ford Motor Credit, 2002 WL 31748838 at *6

(N.D.Ill. 2002), where the court found that Ford Motor Credit's failure to include certain information in its loan report created a question of fact regarding the accuracy of the report under the FCRA. In Curtis, the defendant reported that plaintiffs' car had been repossessed and that they owed an outstanding balance on the loan it had extended. Ford Motor Credit failed to mention plaintiffs had made twenty-two of their twenty-four payments before discovering that the Ford dealership where they purchased the car misrepresented its condition and so they successfully sued both the Ford dealership and Ford Motor Credit. The plaintiffs also denied that the car was repossessed – they maintained that it was voluntarily returned.

Curtis and Schmit's case are easily distinguishable. In Curtis, the plaintiffs challenged the factual accuracy of the defendant's report that their car was repossessed. Schmit does not dispute that Key Bank's report was factually accurate, only that the omission of information made it so misleading as to be inaccurate. While the Curtis court found that the omission of information could create a question of fact regarding accuracy, Ford Motor Credit's allegedly misleading omission was of a judgment against the creditor, a fact of which it was certainly aware. Furthermore, Ford Motor Credit's loan was integral to the plaintiffs' judgment in Curtis because it stemmed from the dealership's fraud.

In Schmit's case, Key Bank was not a party to the suit. As we have stated, plaintiff asserts that Trans Union sent Key Bank a Consumer Dispute Verification form in early January, 2003. Although Key Bank contends that the transmission was not authenticated, we accept, for now, plaintiff's version of events, including that Key Bank verified the information on January 16, 2003. Thus the window of potential liability arose in January 2003 and ended March 31, 2003, when the adverse report was deleted. But what did Key Bank know in

January? It only knew that Schmit stated the information was inaccurate but "Did not provide specific dispute," and that the account had not been paid. If it knew what Trans Union knew, that plaintiff had a judgment against Faul Chevrolet, which was supposed to pay off the loan but had not been collected (which Trans Union could itself have indicated on its report), perhaps it would have had an obligation to flag that as the reason plaintiff had not paid, although that did not erase the debt. But it did not know, or at least there is no evidence that it knew. We believe, in those circumstances, that reasonable investigation extended no further than an internal review.

Even if there was a question of fact regarding Key Bank's provision of inaccurate information or failure to conduct a reasonable investigation, summary judgment would still be appropriate because plaintiff has not provided any evidence of injury as a result of Key Bank's actions. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)(citing Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996); Casella v. Equifax Credit Information Services, 56 F.3d 469, 473 (2d Cir. 1995); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991)). Plaintiff has not been denied credit as a result of Key Bank's alleged violation. She received a home mortgage at the then market rate in 2002, when Key Bank's report regarding her account appeared on her Trans Union credit history. Nonetheless, plaintiff claims that she has suffered humiliation and mental distress as a result of Key Bank's actions. These generalized claims of emotional injury are not enough to establish damages. *See* Lee v. Experian Information Solutions, 2003 WL 22287351 at * 14-15 (N.D.Ill. 2003). Even if they were, as Key Bank highlights, plaintiff has provided no evidence that her stress is due to the

defendant's allegedly misleading omission and not the burden of her loan payments, her son's failed agreement with Faul Chevrolet, or the resulting litigation in state court. Statutory and punitive damages are not available, given the absence of any evidence that Key Bank knowingly and intentionally violated the FCRA in conscious disregard of plaintiff's rights.

## CONCLUSION

For the foregoing reasons Key Bank's motion for summary judgment is granted.

*[signature]*
JAMES B. MORAN
Senior Judge, U. S. District Court

April 9, 2004.